## In re McDONALD.
### Patent Appeal No. 2637.

Court of Customs and Patent Appeals.
March 25, 1931.

John B. Brady, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Examiner, rejecting all of the claims of appellant's application, eight in number, for failure to define invention over the prior art.

Claim 7 is illustrative of the claims on appeal, and reads as follows:

"7. In a power distribution and control system a source of polyphase power, distribution circuits for supplying power to a plurality of different load circuits from said source, polyphase relays located adjacent selected ones of said load circuits and having means for controlling the supply of power to said load circuits and effecting a change in phase sequence of the power in said power distribution circuit at predetermined time intervals for energizing or de-energizing selected ones of said load circuits from one of the phases of said polyphase source while maintaining the phase sequence in others of said load circuits constant."

The references cited by the Board of Appeals are: Edison, 430934, June 24, 1890; Gale, 1182265, May 9, 1916; Currier et al., 1441267, January 3, 1923; Macmillan, 1551529, August 25, 1925.

As will be seen from the above claim, the application of appellant relates to a system for the energizing and de-energizing of specified load circuits by remote control from the central station. Briefly, it consists of a manually operated switch in the control room by which it is possible to reverse the phase sequence in a polyphase electric system; at those points in the system where it is desired to connect and disconnect the load, polyphase relays are inserted which are responsive to the reversal of phase sequence, so that whenever the phase sequence of the power supply is reversed these relays assume the reverse position, thus either closing the circuit or disconnecting it, as the case may be. This scheme is especially applicable in the case of street lighting loads, which may through this method be turned on in the evening and disconnected in the morning following by merely throwing the phase reversal switch in the central station. Wherever there are power loads, such as motors, which necessitate a constant phase sequence and which would be injured by phase reversal during motion, applicant has provided what is referred to as a "safety panel" which consists of a pair of relays which respond to the reversal of phase sequence in the supply line and are so connected that when one is open the other is closed. They are so arranged that the one, when closed, connects the motor to the supply line, and upon a reversal of phase in the supply line this relay opens, disconnecting the motor from the line, and the other relay closes, again connecting the motor to the line in such manner that the phase sequence of the power supplied to the motor is the same as before. In other words, these relays operate substantially as a reversing switch which, at the critical time, reverses the connections of the motor to the supply system to correspond with the phase reversal of the system, thus maintaining the identical phase sequence within the motor itself.

The Edison reference discloses a system for connecting or disconnecting specified load circuits at remote points of a direct current system by means of polarized relays responsive to a reversal of polarity of the supply line; means is also shown for maintaining constant polarity of the power supplied to any device where a constant polarity is essential, irrespective of position of the reversing switch, said means also being in the form of a relay.

The Macmillan reference discloses a switch by means of which the phase sequence of a polyphase alternating current system may be reversed.

The Currier reference discloses a form of relay which opens or closes a pair of contacts, as the case may be, upon the phase sequence of the system supplying it being reversed.

The Gale reference shows a form of electric switch for maintaining the phase sequence of a motor constant when the phase sequence of the line supplying it is reversed.

The Examiner and the Board held that appellant's application shows nothing more than the invention of Edison with changes made to conform to operation on alternating current, and that these changes involve merely the use of equivalents which are well known in the art. On the other hand, appellant argues that this is incorrect and that he has made a true invention.

In discussing the Edison disclosure, the Board of Appeals endeavored to make it more responsive to appellant's alleged invention by considering a direct current system in which the polarity is reversed as, "broadly speaking," an alternating current system of zero frequency in which the phase sequence is reversed. While this might be so considered for some purposes, we are not impressed with it in so far as the issues here involved are concerned; it is too technical and strained, we think, to warrant the assumption that this analogy would occur to those skilled in the art and that it would make the Edison reference a stronger anticipation of appellant's system than would be the

case without it. However, we believe the Edison reference does show the basic inventive thought behind appellant's application; it clearly points out a method, applied to a direct current system, of securing the real objective of appellant's application, that is, remote control to connect or disconnect specified load circuits without the use of any wires other than those necessary for supplying power to the load circuits. This, we think, is the real basis of both systems, and furnishes to the Edison reference its greatest strength.

The question then remains, Was it inventive to apply to a polyphase alternating current system the principle shown in the Edison reference? This, in turn, will depend on what changes were necessary in the Edison system and whether these changes are inventive.

We have examined the references very carefully and conclude that appellant's method of accomplishing, on an alternating current system, what Edison did on a direct current system, was not, in view of the references, inventive. Edison's polarized relay would not work on alternating current; Currier shows a relay which will respond to phase reversal of a polyphase system, and Gale shows a device which prevents a phase reversal of the supply line from effecting a phase reversal in loads where constant phase sequence is essential. The reversing switch, which appellant shows as manually operated, is clearly shown by Macmillan.

Appellant argues in his brief that these devices are not the same as used by him. This may be true; the devices shown in the references probably are not the best of their kind. The point is, however, that they do show means for overcoming the difficulties arising in applying Edison's method of remote control for direct current systems to an alternating current system. Appellant is not claiming any specific form of polyphase relays; he is claiming a control system set out in the claims. We believe that the basic idea of that system was disclosed by Edison and that the obstacles lying in the path of applying the same system to an alternating current line were such as were well known to men skilled in the art, and that, in view of the references cited, the combination of means employed by appellant, as stated in the claims, did not involve invention.

Whether this conclusion be correct or not, the Patent Office tribunals have so held. The questions involved are highly technical and the rule that in such cases the decision of

the Board of Appeals should be affirmed, unless manifestly wrong, is applicable. In re Demarest, 38 F.(2d) 895, 17 C. C. P. A. 904; In re Wietzel, 39 F.(2d) 669, 17 C. C. P. A. 1079. We cannot find that the decision of the Board of Appeals herein is manifestly wrong, but on the contrary we believe it to be correct.

The decision of the Board of Appeals is affirmed.

Affirmed.