## ANGELL v. MORIN.

## MORIN v. ANGELL.

### Patent Appeals Nos. 3276, 3277.

Court of Customs and Patent Appeals.
April 2, 1934.

Henry N. Paul, Frank B. Fox, and Fraley & Paul, all of Philadelphia, Pa., for Angell.

Victor D. Borst, of New York City, and Charles R. Allen, of Washington, D. C., for Morin.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

These are cross-appeals in an interference proceeding involving four counts. The interference is between an application of the party Morin, filed December 7, 1928, and the application of the party Angell, filed December 10, 1928. Morin is therefore the senior party, and the burden was upon Angell to establish priority of invention by a preponderance of evidence.

The claim corresponding to count 1 is for an apparatus, and the claims corresponding to counts 2, 3, and 4 are process claims.

The Board of Appeals affirmed the decision of the Examiner of Interferences, awarding priority of invention to Morin as to count 1 and to Angell as to counts 2, 3, and 4. Angell has appealed from so much of the decision of the Board as awards priority to Morin upon count 1, and Morin has appealed from so much of said decision as awards priority of invention to Angell upon counts 2, 3, and 4.

The invention in issue relates to the production of flexible shafting, which is usually composed of a plurality of layers of wire strands helically wound about a central straight wire known as a mandrel or core. In shafting having more than one layer, the wire strands of succeeding layers are wound in opposite directions. The component wires of the shafting are spring wire, and, when the finished shafting is cut for use, the resiliency of the wires, especially the outer layer, creates a tendency of the helices to unwind and separate longitudinally of the shaft. Several means to overcome this tendency were known to the prior art, but the particular means which is the subject of the invention here in-

BLAND, Associate Judge, dissenting in part.

volved is the passing of the fabricated shafting through a rotary swager and swaging it through its entire length, these swaging blows, when applied with proper force, having the effect of setting the outer layer so that it will not open up when cut.

Both parties took testimony. The preliminary statements of both parties treated all the counts as covering a single invention. Morin alleged conception of the invention during the month of December, 1926, disclosure of the invention to others during the same month, and reduction to practice on November 8, 1928. Angell alleged conception of the invention on or about April 10, 1923, disclosure of the invention to others on or about the same day, and reduction to practice on or about April 24, 1923.

Morin is in the employ of the American Flexible Shaft Manufacturing Corporation, and Angell is in the employ of the S. S. White Dental Manufacturing Company, both of which concerns manufacture flexible shafting.

The foregoing is applicable to all of the counts, but the issues relative to count 1 differ from the issues relating to the other counts, and we will therefore consider the cross-appeals separately.

## Appeal No. 3276.

This appeal involves count 1 only, and Angell has appealed from the decision of the Board of Appeals awarding priority of invention thereon to Morin. The count reads as follows: "1. In a machine for the manufacture of flexible shafting the combination of core pay out means, strand feeding and winding mechanism, and a swaging device disposed beyond the winding mechanism, said swaging device comprising opposed dies embracing the fabricated shaft as it progresses, and means surrounding said dies for rapidly reciprocating them and effecting a hammering action on the coils of said shaft."

The first question arising upon this count is the construction thereof. Angell contends that the words "disposed beyond the winding mechanism" should be interpreted in their broadest sense as meaning outside of the capacity or outside of the limits or sphere of the winding mechanism. Interpreted in this sense, Angell contends that he was the first to conceive the invention embraced in the count and the first to reduce it to practice. The testimony shows Angell's claimed reduction to practice was obtained with a winding machine and a swaging machine, which were in separate rooms.

Upon the question of the construction of the count, the Board of Appeals in its decision said: "It appears that the party Angell was not the first to assemble a swaging means with a shaft winding means but this party contends that since he was the first to swage a previously wound flexible shafting made on another machine, count 1 reads upon his operation because of the limitation that the swaging device is disposed beyond the winding mechanism. The claim clearly calls for a machine and we consider that the use of separate machines does not respond to the terms of the claim and that the ruling of the Examiner of Interferences with respect to this claim was correct."

The party Angell contends that the Board erred in so limiting the count, and invokes the rule that counts in interference should be given the broadest construction that their language will reasonably permit. This is an apparatus count, and it describes a machine having certain specified elements, among them "a swaging device disposed beyond the winding mechanism." It would be most unreasonable to hold that a swaging machine in another room, wholly separate and apart from the winding machine, is within the meaning of the count. It is conceded by both parties that winding machines were old, and that swaging machines were old, and it is clear that, under the broad construction given the count by Angell, the count would not be patentable. Both the Examiner of Interferences and the Board of Appeals construed the count to mean that the swaging device must be combined with the winding mechanism in a machine. In other words, they gave to the count its narrower construction, and properly so.

We would observe that count 1 was suggested by the Primary Examiner for purposes of interference, and, as construed by the Board and the Examiner of Interferences, it clearly reads upon the applications of both parties.

The Examiner found that Angell was the first to conceive the invention embraced in the count, but that he did not actually reduce it to practice, and that he was entitled to his filing date of December 10, 1928, for a constructive reduction to practice. He further found that Angell was not diligent in reducing the invention to practice.

As to Morin, the Examiner found that he conceived the invention involved in count 1 early in 1927, and was the first to reduce it to practice.

648

The Board of Appeals, without discussion, affirmed the findings of the Examiner of Interferences, for the reasons stated by him.

Angell contends that there is no corroboration of Morin's testimony that he conceived the invention embraced in this count early in 1927, and that the earliest date to which he is entitled is October 15, 1928, which was after Angell's attorney had been directed to prepare the application here in issue. It is established that Morin did conceive and disclose to others the idea of swaging flexible shafting by means of a machine. While there is no direct testimony that Morin disclosed to others the idea of combining a swaging machine with a winding machine, the Examiner held that this combination would be obvious, especially as both parties had so testified. We are in accord with this finding, and are of the opinion that Morin was entitled to the early part of 1927 for conception of the invention embraced in the count. Inasmuch as Angell was doing nothing toward combining a swaging machine and a winding mechanism, as called for by the count, at the time Morin entered the field, and did nothing in that regard until 1928, and Morin having been the first to reduce the invention to practice, we hold that Angell was lacking in diligence in reducing the invention to practice, and priority of invention as to said count was properly awarded to Morin.

Finally, Angell contends that count 1 is not patentable. This is a question which may not be determined by us in an interference proceeding, and we express no opinion upon that subject. Schuster v. Brown, 69 F.(2d) 373, 21 C. C. P. A. ——; Marshall & Levandosky v. Ledwinka, 67 F.(2d) 495, 21 C. C. P. A. ——.

It does not necessarily follow that a patent will be issued to the successful party in an interference proceeding. Gowen v. Hendry, 37 F.(2d) 426, 17 C. C. P. A. 789.

Appeal No. 3277.

In this appeal Morin appeals from the decision of the Board of Appeals awarding priority of invention to Angell upon counts 2, 3, and 4, all being process counts.

Upon this appeal two issues are involved:

(1) The right of Angell to make the claims corresponding to the counts.

(2) The question of priority of invention upon the evidence found in the record.

Count 2 is illustrative of the counts involved in this appeal, and reads as follows: "2. The step in the method of making such flexible shafting as is formed with a core surrounded by a helix which consists in applying blows to the peripheral surface of the shafting of a force only just sufficient to properly stretch the outer layer of a material of the turns so as to overcome the inherent tendency of the turns to unwind."

With respect to the right of Angell to make the claims corresponding to the counts, Angell contends that, upon the record before us, this is not a question ancillary to priority, and that Morin, not having made a motion to dissolve the interference as to said counts, may not here raise the question of Angell's right to make the claims corresponding thereto.

The Board of Appeals held that Morin had the right to raise this question under rule 130 of the Patent Office, the pertinent portion of which reads as follows: "130. Where the patentability of a claim to an opponent is material to the right of a party to a patent, said party may urge the nonpatentability of the claim to his opponent as a basis for the decision upon priority of invention. A party shall not be entitled to raise this question, however, unless he has duly presented and prosecuted a motion under rule 122 for dissolution upon this ground or shows good reason why such a motion was not presented and prosecuted. * * *"

Rule 109 provides for amendments of applications presenting new claims for purposes of interference. Under the rule the opposing party may oppose the admission of such amendments; but, if the amendments are allowed, no motion may thereafter be made to dissolve the interference as to such new counts where the questions raised could have been disposed of in connection with the admission of the claims.

Said counts 2, 3, and 4 were added to the interference by way of amendment, and the interference was redeclared to include said counts. Morin opposed said amendments, and under rule 109 he was precluded from thereafter making a motion to dissolve the interference as to said counts, and therefore a good reason was disclosed on the record why a motion to dissolve was not made by him under rule 122. It therefore clearly appears that, under the rules of the Patent Office, Morin had the right upon appeal to raise the question of Angell's right to make the claims corresponding to said counts, and that question is properly before us.

The determination of this question rests upon the construction of Angell's spec-

ification. The invention lies in so swaging flexible shafting as to overcome the inherent tendency of the turns of the outer layer of wire to unwind, without causing material distortion of the surface configuration.

Angell recites that the object of his swaging operation is to provide an "inert flexible shaft" which is "free from internal friction or internal stresses"; it is further recited therein that the mechanism described is designed "to effect the production of continuous inert shafting, or shafting that will not twist and tangle when cut in lengths or otherwise released or taken from the takeup spool."

The Examiner of Interferences in his decision upon Angell's motion to amend to include the counts here considered, in holding that Angell's disclosure supported said counts, said: " * * * A shaft which is 'inert' and free from 'inherent stresses' would appear, if these terms be given their reasonable meaning, to exhibit no tendency of its ends to uncurl. The distinction urged by Morin appears to be a matter of words rather than substance. Morin has not, in his specification, pointed out the exact amount of force to be applied in swaging under any given set of conditions. * * *"

Upon final hearing the Examiner of Interferences adhered to the prior ruling that Angell could make the claims corresponding to said counts.

The Board of Appeals affirmed this holding, and in its decision stated upon this point as follows: "The Angell application, as above indicated, does call for the reduction of the coils of the shafting so that it will not tangle or twist when released. We believe it is clear from the record that Angell in producing a shafting which will not be sufficiently reduced so as to increase, rather than decrease, the internal friction and which will be inert so that it will not tangle or twist in the manner described must necessarily produce a shafting which will have the turns stretched just sufficiently to overcome the inherent tendency to unwind. We believe that the record clearly shows that if the swaging is carried too far the shafting will become stiff and the friction will be increased while if the swaging is too light the coil will not be given the proper set and the shafting will have a tendency to become twisted or tangled when released. It is our opinion, therefore, in carrying out the operation described in the Angell application, that it is substantially necessary to perform the process called for in the process counts and that the party Angell, if he is the prior inventor, has a right to carry out such a process."

Thus we have both tribunals of the Patent Office concurring in holding that Angell's application supports the counts here in issue. The question is a technical one, and it is therefore especially appropriate that the rule be applied that concurring decisions of the Patent Office tribunals will not be disturbed unless manifestly wrong. We are not convinced that said tribunals erred in holding that Angell's application supports said counts, but, on the contrary, it is our belief that they were correct in so holding.

Upon the question of actual priority of invention, the Examiner of Interferences held that Angell conceived the invention in 1923 and reduced it to practice in the early part of 1928. The Board of Appeals did not find any date that Angell conceived the invention, but concurred with the Examiner in finding that Angell reduced the invention to practice early in 1928. Both tribunals held that Angell was the first to conceive and the first to reduce the invention to practice, and that he was entitled to an award of priority.

Morin, as hereinbefore stated, alleged in his preliminary statement conception of the invention in December, 1926, and reduction to practice on November 8, 1928.

We are in accord with the findings of the Board of Appeals above recited. We think that conception of the invention by Angell in 1923 is clearly established by the evidence. With respect to his reduction to practice in the early part of 1928, it is clearly established that Angell had flexible shafting swaged, that it was cut, and that he measured the degree of "opening" or "unwinding." He testified to using a micrometer and measuring the increase in diameter at the ends of the cut shaft as compared with diameters at some distance from the ends. He testified that such increase in diameter in shafts which had not been heat treated was from .002 to .004 inches. These measurements were, according to the testimony, made in the presence of one Emmet Arthur Joline, vice president of the S. S. White Dental Manufacturing Company, but said Joline did not read the micrometer held upon the shafting by Angell; hence Morin contends that there is no corroboration of Angell's testimony that the test was successful and that the invention was reduced to practice at that time. While it is true that the witness Joline was not in a position to corroborate the exact measurements made by Angell, he did testify that the swaged shaft-

ing was inert and did not open up on being cut, and that there was no enlargement of the ends visible to the eye. He also testified that the cut ends of the swaged shafting were capable of being inserted into a tip for attachment to an instrument. One Franklin B. Ward, a witness for Angell, testified that he swaged the shafting last above referred to, and that, after cutting, the cut ends could be inserted in a tip.

In the decision of the Examiner of Interferences, affirmed by the Board of Appeals, it is stated: "It is to be noted that the counts do not require the production of shafting having any particular degree of torsional deflection and that the Morin application, in which they originated, makes no mention whatever of the "critical" amount of swaging. In view of these facts it must be held that a shaft which is satisfactory for any commercial purpose and which does not open up sufficiently to interfere with its insertion in the usual tips, is all that is contemplated by counts 2 and 4. The shafts produced by Angell appear to satisfy these requirements. * * *"

We are in accord with the foregoing. It is our opinion that Angell's testimony with respect to reduction to practice of the invention is sufficiently corroborated, and that he was the first to conceive and the first to reduce to practice the invention involved in said counts 2, 3, and 4.

The decision of the Board of Appeals is affirmed as to all counts involved in the cross-appeals herein.

Affirmed.

HATFIELD, Associate Judge, did not participate.

BLAND, Associate Judge, dissents as to count 1.