24 C.C.P.A.(Patents)

## DALEY v. TRUBE.

## SAME v. LOFTIN.

## Nos. 3713, 3714.

Court of Customs and Patent Appeals.
March 1, 1937.

J. Harold Kilcoyne and Paul A. Blair, both of Washington, D.C., and John F. Cusick, of Boston, Mass., for Daley.

Laurence B. Dodds, of New York City, and Clarence M. Fisher, of Washington, D. C. (Pennie, Davis, Marvin & Edmonds, of New York City, of counsel), for Trube.

Harry G. Grover, J. G. Norton, and P. L. Rodier, all of New York City, for Loftin.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Joseph J. Daley filed an application, serial No. 447,715, in the United States Patent Office on April 26, 1930, for "Means and Process for the Amplification of Radiant Energy." This application, which was a division of Daley's application, serial No. 228,249, filed October 24, 1927, ripened into patent No. 1,764,934, issued June 17, 1930.

Carl E. Trube filed his application, serial No. 120,045, on July 2, 1926, for "Electric Coupling Systems." On December 18, 1929, this application was allowed with five claims drawn to "an electric coupling system," and notice was sent to Trube as assignor to the Hazeltine Corporation. Trube died on June 18, 1930, and the Hazeltine Corporation, as his assignee, executed a petition for renewal of the application under the provisions of rules 175 and 176 of the Rules of Practice of the United

States Patent Office. On June 30, 1930, this renewal application went to allowance with five claims. On July 31, 1930, the application was forfeited and renewed for the second time, petition being made to amend the application by adding claims 1 to 4, inclusive, and 7 to 12, inclusive, of the aforesaid Daley patent.

Edward H. Loftin had been granted a patent on October 9, 1928, No. 1,686,755, on an application filed December 24, 1925, serial No. 77,445, for "Method of and Apparatus for Operating Electrical Amplifiers." On October 6, 1930, he filed his application, serial No. 486,850 for reissue of said patent.

On October 3, 1930, interference No. 60,613 (hereinafter referred to as interference "A") was declared between claims 1 to 4, inclusive, and 7 to 12, inclusive, of the aforesaid Daley patent, and claims 20 to 29, inclusive, of Trube's application as renewed, which claims had been copied, as before stated, by Trube from the Daley patent. The interference was subsequently redeclared, the issue being limited to six counts, being claims 3, 4, and 7 to 10, inclusive, of the Daley patent, and claims 22 to 27, inclusive, of the Trube application.

On August 14, 1931, interference No. 62,140 (hereinafter referred to as interference "B") was declared between claims 1 and 2 of the said Daley patent, claims 20 and 21 of the Trube application, and claims 20 and 21 of the Loftin application. Interference "B" was subsequently redeclared to include claims 11 and 12 of the said Daley patent, claims 28 and 29 of the Trube application, and claims 30 and 31 of the Loftin application. All the counts originated in the Daley patent and were copied by the other parties into their respective applications for interference purposes, and all the counts had been in interference "A," which had been dissolved as to them.

Count 1 (Daley claim 3) of interference "A" is typical of all six counts of that interference and reads: "1. A system of amplification of radiant energy comprising an electronic device, a transformer, a tuning capacity, a capacity connected in series between the primary and secondary of the transformer, said capacity being also in series with the tuning capacity, and both capacities being connected in shunt across the secondary of the transformer, and the electrical values of the said inductances of the transformer and of the said capacities being relatively such that the system is essentially nonregenerative."

Count 1 (Daley claim 1) of interference "B" is typical of all four counts of that interference and reads: "1. A system of amplification of radiant energy comprising electromagnetic and electrostatic paths of energy transfer and an electronic device wherein the electromagnetic and the electrostatic values of said transfer paths are balanced to produce a zero difference of potential in respect to all undesired currents between the elements of the electronic device and to obtain a substantially equal energy transfer throughout the range of frequencies to which the system is tunable."

In both interferences, Daley is the junior party and is the only party who took testimony.

In interference "A," Daley, during the motion period, moved to dissolve the interference under the provisions of rule 122, substantially on the following grounds:

First. Trube has no right to make the counts of this interference.

Second. The express forfeiture and second renewal and amendment of the allowed Trube application was improper, it being claimed that Trube, for interference purposes, had no pending application; that the Trube application here involved is forfeited under the law and under Patent Office rule 174, and no interference can be instituted between a forfeited application and the Daley patent.

The Examiner of Interferences denied the motion, holding that as to the first ground Trube could make the counts; and as to the second ground that he (the Examiner) was without authority to pass upon the validity of the Rules of Practice.

After taking testimony and prior to final hearing, appellant Daley filed a petition to the Commissioner of Patents complaining of the said alleged irregularity in the interference, for the reason that the express forfeiture, renewal, and amendment of the Trube application was invalid. The petition was denied on the authority of Ex parte Buehler, 333 O.G. 261, 1925 C.D. 24.

On appeal to the Board from the decision of the Examiner of Interferences on final hearing, the same question was raised. The Board did not discuss or decide the question. Upon appeal to this court from the Board, four reasons of appeal raising this question were filed.

Daley in his brief expresses doubt as to whether or not this court has jurisdiction to decide the question, but states: "* * * It would seem that the question

of priority could not be adjudicated in an interference unlawfully set up. * * *"

He calls attention to the fact that he had raised the said objections in a motion to dissolve, and on petition to the Commissioner, that the same question was raised on appeal from the Examiner of Interferences to the Board, and that he is raising the question here. Later herein reference will be made to a question, raised in interference "B," which we regard as being quite similar to the one presented here. Appellant concedes, in interference "B," that the question presented to the tribunals below is not before us for decision, but no such concession is made in respect to the question presented here in interference "A."

Following final hearing, the Examiner of Interferences, sua sponte, issued an order to show cause "why this interference should not be dissolved on the ground that the original disclosure of each [party] is insufficient to support any of the counts."

The Examiner of Interferences on final hearing held that neither party could make the counts, and dissolved the interference without an award of priority. Both parties thereupon appealed to the Board of Appeals.

The Board held, for the reasons given in its decision in interference "B," that both Daley and Trube were entitled to make the counts on their respective disclosures; that Trube was restricted to his filing date of July 2, 1926, for conception and reduction to practice because he had taken no testimony; that Daley had not established by sufficient proofs the construction of Exhibit 4 (more particularly referred to hereinafter) prior to Trube's filing date, and that, since it does not appear that Daley was definitely engaged in reducing to practice any particular conception at the time Trube entered the field, it could not be held that Daley had established reduction to practice prior to the filing date of Trube, and awarded priority of invention to Trube.

Daley thereupon appealed to this court (Patent Appeal No. 3713).

In interference "A," as we see it, on the foregoing statement of facts there are three main questions presented by appellant:

First. Whether the renewal of the Trube application after forfeiture, and second renewal copying claims from the Daley patent, was valid under the law, it being claimed that rule 175 is invalid as permitting the waiver of the final fee.

Second. Whether, if the Trube application is valid, the disclosure of Trube supports the counts of the interference which are claims of the Daley patent.

Third. Whether, if the renewal application of Trube is valid and if the disclosure of Trube does support the counts of the interference, which of the parties, Daley and Trube, under all the evidence of record, is entitled to an award of priority.

Appellant raises two additional questions (which he also raises in interference "B"), namely: (1) That the claims copied by the appellees without copying Daley's claims 5 and 6 do not constitute the subject matter or invention of Daley; (2) that the Board erred in failing to consider Daley's motion to strike certain evidence.

Before passing on the issues involved in interference "A," we will set out the pertinent facts appertaining to interference "B," and, for reasons hereinafter stated, render a decision thereon.

In interference "B," Daley, during the motion period, moved to dissolve the interference for three reasons:

First. That the oath supporting the application for reissue is not in accordance with United States Revised Statutes, § 4916 (as amended [35 U.S.C.A. § 64]), or rules 87–88 of the Rules of Practice of the United States Patent Office, in so far as it does not set out a prima facie right to reissue.

Second. That the counts are not supported by Loftin's original disclosure, and therefore Loftin has no right to make the counts.

Third. That Loftin is estopped from claiming the invention of the counts because of his delay in applying for reissue of his patent.

This motion was denied, the Examiner of Interferences holding that Loftin had set forth sufficient ground to warrant an application for reissue, that his application for reissue was filed without unreasonable delay, and that Loftin's original application supported the counts of the present interference.

After final hearing, the Examiner of Interferences, sua sponte, issued an order to show cause "why this interference should not be dissolved on the ground that the original disclosure of each [party] is insufficient to support any of the counts."

Daley filed a plea and answer to this order and questioned the authority of the Examiner of Interferences to consider the sufficiency of the disclosure of his patent to support the counts of this interference.

The Examiner of Interferences held that the disclosure of the Trube application, serial No. 120,045, was insufficient to support the counts of the interference; that the application of Loftin supported the counts of the interference; that Daley had no right to make the counts of this interference; and that priority of invention should be awarded to Loftin. He further held that: "If upon appeal it should be held that the disclosures of Trube and/or Daley are sufficient to support the counts consideration must then be had of the evidence upon the question of priority."

The Examiner of Interferences held that Trube, having taken no testimony and being restricted to his filing date, which was subsequent to Loftin's filing date, could not in any event prevail over Loftin, and that the contest of priority, therefore, became one between Loftin and Daley; that: "In order for Daley to prevail upon the evidence he must show (1) that he conceived the invention prior to December 24, 1925, and (2) that the invention was reduced to practice by him prior to December 24, 1925, or that a reduction to practice made subsequent to said date was coupled to the prior conception by diligence beginning just prior to said date."

The Examiner of Interferences held that conception of the invention by Daley prior to Loftin's filing date of December 24, 1925, had not been established. He further held that if upon appeal it should be held that Loftin cannot make the counts, the contest of priority would then be one between Trube and Daley; that, in that event, Trube was restricted to his filing date of July 2, 1926, for conception and constructive reduction to practice, for the reason that he had taken no testimony; that Daley was the first to conceive and the last to reduce to practice and that Daley was not diligent from a time just prior to Trube's record date of July 2, 1926, up to the earliest date accorded him for a reduction to practice; and, accordingly, that Trube was prior with respect to Daley.

On appeal, the Board of Appeals held that the objection of Daley to the right of Loftin to a reissue application, the principal ground thereof being the sufficiency of Loftin's reissue oath, was a matter which did not go to the issue of priority, but was a question of patentability to Loftin; that such a question was not before the Board in the interference proceeding; and that "The examiner is authorized to consider de novo the matter of the sufficiency of the oath in the reissue application of Loftin when the interference is concluded and the case is returned to his jurisdiction for further action ex parte." The Board further refused to affirm the holding of the Examiner of Interferences that the parties Daley and Trube were not entitled to make the counts of this interference; affirmed the holding of the Examiner of Interferences that conception of the invention by Daley prior to Loftin's filing date of December 24, 1925, had not been established; that Daley had not been diligent; and that priority of invention should be awarded to Loftin.

Trube did not appeal from the decision of the Board; Daley appealed therefrom to this court (Patent Appeal No. 3714).

We are in agreement with the decision of the Board of Appeals in interference "B" that the objection by Daley to the sufficiency of the reissue oath of Loftin involves a question of patentability and not of priority, and therefore is not before us for decision. As is hereinbefore stated, appellant expressly concedes this fact.

As interference "B" comes to us, there are but two questions involved: (1) The right of the party Loftin to make the interference counts; and (2) which of the parties, Daley or Loftin, is entitled to an award of priority.

Daley has argued to the effect that his disclosure is a system of amplification and that the disclosures of Trube and Loftin are mere coupling systems. The Board said that it was not impressed with this position and we find ourselves in the same state of mind. The invention in issue is directed to a vacuum tube amplifying system useful in radio receivers, including a coupling system having a circuit arrangement and electrical values such that undesirable regeneration is avoided and such as to provide a substantially uniform response over the tuning range of the receiver. The circuit arrangement is utilized to couple the output circuit of one vacuum tube to the input circuit of a succeeding vacuum tube, the latter circuit being tunable over the broadcast frequency range to select a desired signal and reject undesired signals. The inductive or electromagnetic and capacitive or electrostatic couplings are so proportioned that, through the tunable

frequency range, the energy transfer is maintained approximately constant at a maximum value consistent with stability of operation and freedom from regeneration and disturbing oscillations.

The involved and unusual foregoing statement of facts, and the order and manner in which the tribunals below considered the two interferences, would seem to require that we first decide the issues in interference "B" rather than the issues in interference "A," the first question presented being: Can Loftin make the four counts involved?

It will be noticed from the foregoing statement of facts that, in this interference, unlike interference "A," there is a concurrence of opinion by the tribunals below on this question, both holding that Loftin can make the counts.

Appellant in his brief and in oral argument here, and evidently before the tribunals below, in commenting on the rulings of the tribunals on his many different motions and petitions, has emphasized the contention that the Examiner of Interferences and the Board of Appeals have been confused about Daley's real invention and that Daley has not been able to get the tribunals to understand what Daley's real invention is and to understand the difference between the Daley invention and the inventions of Loftin and Trube. He urges that the tribunals of the Patent Office have not been able to understand that Daley's invention is a *nonproducer* of regeneration, while Loftin's and Trube's systems are, he says, admittedly nothing more than mere *controllers* of regeneration. In the various petitions and motions in the record (which contains about 1,000 pages), and in appellant's voluminous and thorough brief of nearly 200 pages, the highly technical matters relating to the invention here involved are discussed and explained at great length. A mere reading of the counts makes obvious the highly technical subject matter involved. Necessarily, it follows that great difficulty is encountered in arriving at any kind of understanding, technical or otherwise, of many of the phases of the disclosures of the parties involved.

■ It may not be amiss to suggest that our ability to understand the highly technical subject matter which appellant presents could hardly be expected, under the circumstances, to excel that of those in the Patent Office who have given it such careful and detailed consideration. The rule is well settled that, where there is a concurrence in decisions by the tribunals below, the decision appealed from will not be disturbed by the courts unless it is made clear that the same is erroneous. This rule has been made particularly applicable in cases involving highly technical matters. See Angell v. Morin, 69 F.(2d) 646, 21 C.C.P.A.(Patents) 1018; In re Demarest, 38 F.(2d) 895, 17 C.C.P.A.(Patents) 904; In re McDonald, 47 F.(2d) 802, 18 C.C.P.A.(Patents) 1099.

■ What we say here in considering the question of the right of the party Loftin to make the counts also applies with equal force to some of the other questions herein presented. There is a concurrence of the tribunals in their holding that Loftin, in the interference now under consideration, could make the counts, and the Board explains in great detail why, if Loftin's disclosure responds to the counts, Daley's disclosure would likewise warrant a holding that he could make the counts. And, for the reasons assigned by the Board, which need not be repeated here, we are of the opinion that the Board correctly held in interference "B" that both parties, Daley and Loftin, could make the counts.

■ We will now consider the second question for decision in interference "B," which, as before stated, involves the parties Daley and Loftin, Trube having taken no appeal. This requires a consideration of the testimony and its bearing on the questions involved in determining priority. There is but one testimonial record involved in the two interferences. Substantially the same testimony, except in the particulars hereinafter pointed out, is involved in interference "B" where Loftin is concerned as is involved in interference "A" where Trube is concerned. Any testimony which has reference to matters happening after Loftin's filing date (December 24, 1925) of course has no relevancy in interference "B," but may be important in the Trube case, interference "A."

We will first state the important facts disclosed in the testimony which have a bearing upon Daley's activities prior to Loftin's filing date.

Daley was a priest and a member of the Jesuit order; his education included scientific work in the field of wireless and radio. Besides his own testimony, he introduced the testimony of Thomas J. Smith, Henry J. Wessling, Daniel J. Lynch, Edward P. Tivnan, John W. Casey, Louis J. Young;

George E. Hanlon, and Charles E. Lane, all of whom were priests and members of the Jesuit order. His witness Walter M. Cusick worked with Daley directly, or under his supervision, from about the last week in January or the first few days of February, 1926, to the filing of the Daley application, October, 1927, and from then on to the formation of the Research Products Corporation in August, 1930. Appellant also introduced the testimony of Arthur F. Graham, who assisted Cusick, and that of F. Malcolm Gager, a teacher and lecturer in radio communications, and employed as an engineer by the said Research Products Corporation for about a year and a half prior to the taking of evidence in the instant suits.

In his preliminary statement, Daley alleged a date of conception in July, 1918. He testified that he devised a circuit and incorporated that circuit into a radio receiver prior to 1922; that he operated the receiver at 761 Harrison avenue, Boston, in April, 1922, and that the circuit embodied in this 1922 receiver is substantially the circuit that is embodied in the patent claims. Daley's testimony is to the effect that he operated the radio receiver for the witnesses Lynch, Hanlon, Tivnan, Young, and (as stated by the Examiner of Interferences) "possibly Lane and Wessling."

Lynch and Tivnan testified that at that time (April, 1922) Daley, in their presence, operated a radio set which he brought with him. Hanlon and Young did not remember having heard a set operated by Daley at that time, although Young does remember having seen in Daley's room a set of the general appearance of the set illustrated in Exhibit No. 3 (which was a sketch drawn by Daley at the time of taking the testimony in the instant cases). Hanlon merely states that Daley had a set in his room at that time. Lane was not questioned as to this matter. Wessling, who was blind, testified that he did not hear the set operated, although he knew from his sense of touch and from what was told him at the time that Daley had a set of the general configuration of Exhibit 3 in his room at the time alleged.

Daley testified, in effect, that he described the set to the witnesses as being nonregenerative with constant energy transfer and that it was free from the influence of tube capacity.

Lynch stated that Daley made this statement and that the set performed equally well with various tubes. Tivnan stated that he expressed his wonder upon hearing the set and that he understood that Daley said, with reference to the same, that there was nothing interfering with the process. Young testified that Daley had stated to him at that time that the set was nonregenerative. Lane was not questioned as to this matter. Wessling remembers that Daley stated that the set was nonregenerative and independent of tube capacity. The circuit of this receiver was not described at the time to any of the witnesses. According to some of the witnesses, the receiver was tested to the extent of judging by ear from operation of the set whether the transfer of energy was constant and the radio frequency amplifier nonregenerative. It is stated by Daley that, while operating the receiver before the witnesses Wessling, Young, and Lynch, the tubes were interchanged and that the reception was not affected thereby. Lynch corroborates Daley as to this interchange of tubes in his presence and the absence of any aurally discernible change in the reception.

As to this feature of the testimony, relating to the April, 1922, receiver, the Examiner of Interferences in interference "B" held: "The testimony on this point merely serves to show that Daley operated, in April, 1922, a receiver before Lynch in which interchange of tubes did not cause it to squeal. Whether that interchange of tubes did or did not cause regeneration is not proved and of course such test in no way disclosed the circuit in issue." The Examiner of Interferences held that the construction of the receiver referred to does not show conception or reduction to practice of the subject matter of interference "B," "for there is no corroborating evidence whatever to support the bare statement of Daley as to the circuit of said receiver, nor as to the claimed characteristics of said receiver." This was substantially the view of the Board.

Daley testified that in the middle of 1923 he gave to Young a circuit diagram of the receiver referred to above. Young testified as to receiving a circuit diagram of a radio set at that time which Daley stated was for the 1922 set; that the diagram had been lost; that he read the circuit diagram to Wessling in August or September, 1923. Wessling corroborated this. Young stated that he did not recall or understand the circuit of the diagram at the time it was given to him because he was not experienced in radio. Wessling testified that he

**314**

recalled the circuit as read to him by Young and at the time of taking the testimony dictated it for the record.

The Examiner of Interferences held that the existence and contents of the sketch claimed to have been given by Daley to Young and read to Wessling in September, 1923, were not sufficiently established to be given any substantial weight and held that conception of the invention by Daley prior to Loftin's filing date of December 24, 1925, had not been established. The Board of Appeals affirmed this finding of the Examiner of Interferences.

We are in agreement with the decision of the Board. Daley's proven facts are not sufficient to meet the requirements of law with reference to the burden of a junior party in making proof of priority. There are no documentary exhibits in evidence which afford convincing proof that Daley had any conception of the invention involved in the counts of the issue prior to Loftin's filing date, and the oral testimony of Daley's witnesses fails to definitely and clearly corroborate the testimony of Daley and, without going into detail, it seems that in many respects Daley's testimony is lacking in clearness concerning critical and important technical matters. Moreover, as is pointed out by the tribunals below, there is some conflict in the testimony of appellant's witnesses.

This is not a case like Levy v. Gould et al. (Levy v. Rice), 87 F.(2d) 524, 24 C.C.P.A.(Patents) ——, the decision in which was handed down by this court on February 8, 1937, and in which we reversed the decisions of the Board of Appeals in two of the interferences involved which had awarded priority of invention in a radio matter to the respective senior parties. The counts involved, in the said decisions reversed, broadly involved remote control for radios. It required no scientific knowledge to understand the disclosure of the broad subject matter of those counts. We differed from the conclusion of the board in its holding as to the establishment of the authenticity as to the time and subject matter of important documentary proof.

The decision of the Board of Appeals in interference "B" (Patent Appeal No. 3714) awarding priority to the party Loftin is affirmed.

## Interference "A."

We will next consider the decision of the Board of Appeals awarding priority to the party Trube in interference "A." The first question for decision is one which the Board did not discuss. Its failure to do so is assigned as error here. The question is stated by appellant in the following language:

"Whether or not the renewal of the Trube application on June 18, 1930, following allowance of December 18, 1929, under Rules 175 and 176, followed by another allowance of the Trube application on June 30, 1930, and followed by express forfeiture and second renewal of the Trube application on July 31, 1930, with amendment copying claims from the Daley patent 1,764,934, was valid under the law."

Appellant presented this question to the Commissioner of Patents in a petition seeking to have the declaration of the interference vacated. The Commissioner denied the petition. In this court appellant frankly expresses doubt as to the jurisdiction of this court to consider the question, but expresses the belief that our decisions in Re Kaisling, 44 F.(2d) 863, 18 C.C.P.A.(Patents) 740; Herthel and Tifft v. Dubbs, 65 F.(2d) 138, 20 C.C.P.A.(Patents) 1128; and Doherty v. Dubbs, 68 F.(2d) 373, 21 C.C.P.A.(Patents) 807, can be distinguished. We need not discuss the Kaisling Case; that case is discussed in Doherty v. Dubbs, supra.

In Doherty v. Dubbs, supra, the question of inconsistency between claims which stood allowed in the application of one of the parties to the interference and the additional claims which were sought to be added was held not to be a proper matter for this court to consider in an interference proceeding. We there said that such a consideration was a matter to be taken up ex parte.

In Herthel and Tifft v. Dubbs, supra, appellants as one of their contentions argued that Dubbs' renewal application contained claimed matter different from that claimed in his forfeited case. This matter was urged as a reason for dissolution of the interference, and we said that this contention presented broadly the question of the extent to which this court may consider patentability in an interference proceeding. The Patent Office tribunals did not consider the question in connection with the issue of priority, there having been no motion to dissolve upon that ground, and this court held that it might not properly do so as an ancillary matter.

It is our view in the instant case that the question which appellant has raised relates to patentability, is not ancillary to priority, and therefore, under a long line of decisions, which needs no citation here, is not a subject matter which may be considered in this kind of proceeding.

The second question goes to the right of the party Trube to make the counts, which are claims taken from Daley's patent. The Examiner of Interferences held that Trube could not make the counts. For reasons assigned in interference "B," the Board held that Trube could make the counts. In interference "B" it said:

"We are also of the view that the disclosure of the Trube application has substantially the same mechanism disclosed as is shown in the Daley disclosure. Trube depends, as apparently the other parties do, upon persons skilled in the art for selection of the proper values or constants to be used in his organization. As to the blocking effect of the condenser 10 of Daley and whatever aiding effect it may have, the Examiner in his decision in the two-party interference [interference "A"] has pointed out that the condenser C5 of Trube may be the equivalent of condenser 10 of the Daley patent, but that this could be of no aid to Trube in that there is no disclosure that the specific elements of the counts will produce a non-regenerative condition under any conditions of assigned impedance values.

"Daley has argued to the effect that his disclosure is a system of amplification and that the disclosures of Trube and Loftin are mere coupling systems, but we are not impressed with this position.

"In view of the mechanism disclosed in the Trube application, we are disposed to agree with the position of the Examiner of Interferences in his decision on the motion to dissolve, to the effect that a device built in accordance with the teachings of Daley and Trube would have similar characteristics, and that any result obtained by Daley would be obtained by Trube. In view of the disclosure and the lack of requirements as to values and constants in the case of the patents, and for the various other reasons to be determined from the testimony, we will not affirm the action of the Examiner of Interferences, holding that the parties Daley and Trube are not entitled to make the counts of the interference."

Appellant has pressed the point here in urging a reversal of the decision appealed from that the usual well-known rule with respect to concurring decisions is not applicable. In a case involving matters as highly technical as those which confront us here, it should be made clear to the court that the decision appealed from is erroneous, regardless of the fact that the Board's decision did not concur with that of the Examiner of Interferences.

We have carefully considered the arguments made by counsel in this court as well as the explanation offered at the hearing here by a radio engineer produced by appellant. We have given careful consideration to the views of the Examiner of Interferences, who held that Trube could not make the counts, but we are not convinced that the decision of the Board is erroneous on this phase of the case. Like the Board, we are of the opinion that Trube's disclosure is substantially the same as that of Daley. It seems to us that, as far as the elements of the involved counts are concerned, if it were concluded that Trube shows only a coupling system and that this coupling system only controls regeneration the same must be true of Daley. At any rate, we are not prepared to say, on this highly technical matter, that the Board is in error in its conclusion in that respect. It seems to us that, if it is a fact that the Daley system is a nonproducer of regeneration while Trube's is a mere controller of regeneration, it is by virtue of some structure not expressed in the counts at bar. We therefore hold that Trube can make the counts.

This leaves only the third question, that of priority, and two additional questions which appellant seeks to have us decide. Before passing on the question of priority, we will discuss the two additional questions: First, it is urged by appellant that the claims copied by Trube (and the same argument applies as to Loftin in interference "B") which are now at bar "do not constitute the subject matter of invention of Daley." It is difficult to understand the purport of this position, and it is our view that appellant's reasons of appeal are not sufficiently specific and definite to raise the question.

The second additional question above referred to is presented by the following reason of appeal: "8. The Board of Appeals erred *in failing to consider* Party Daley's Motion to Strike and Suppress certain evidence." (Italics ours.)

It will be noticed that the reason of appeal is based upon the Board's failure to consider the motion to strike. This reason of appeal does not raise any question on the merits of any ruling on the motion. Although the Board said nothing concerning appellant's motion to strike certain testimony set out in the motion, we cannot say that the record shows that it did not consider the question. None of appellant's reasons of appeal raises the question that the Board committed error in refusing to reverse the decision of the Examiner of Interferences for his denial of appellant's motion or his failure to allow it.

The remaining question, that of priority, requires a consideration of some of Daley's testimonial record. Trube is restricted to his filing date, July 2, 1926, for conception and reduction to practice, having taken no testimony. The only evidence we need to consider in this interference other than that considered above in interference "B" is that which relates to the period of time after Loftin's filing date, December 24, 1925.

Daley testified that during the period from January to March, 1926, he disclosed to the witnesses Wessling and Cusick the circuit and constants for a radio receiver which embodied an amplifier circuit similar to that shown in the Daley patent. This is corroborated by Wessling and Cusick. The Board of Appeals held, in substance, that Daley was entitled to a date of conception prior to the filing date of Trube, and then discussed Daley's proof as to reduction to practice and also the question of diligence.

For reduction to practice, Daley relies upon a receiver alleged to have been built in January of 1926, and also a receiver, Exhibit 4, supposed to have been completed in the early part of April, 1926.

Daley testified to having a complete operating receiver in January of 1926, and defined this circuit as showing his nonregenerative and constant maximum energy transfer concept, and also testified to the use of this receiver and its disclosure to Wessling and Cusick in January of 1926, and further arranged with Cusick to jointly build another receiver. This receiver of 1926 was dismantled and could not be produced in evidence, and it appears in evidence that the diagrams made by Daley were lost and every effort in the line of search was made to obtain them, but they could not be obtained. Tests were made

by Daley in the presence of Wessling and Cusick and these tests consisted of what was known as the aural tests, and the interchanging of tubes to show that the receiver was independent of tube capacity.

Wessling testified that in 1926 he occupied the room next to Daley at Boston College High School; that in January of 1926 Daley had a full operating receiver; that Daley traced out the circuit to him, described it as to its nonregenerative features and its constant maximum energy transfer; that he operated this set; that he was present when Daley made tests of this set with other sets when he interchanged tubes to indicate that it was independent of tube capacity; and that he identified it as the same circuit that Young described to him in 1923.

Cusick testified that he met Daley at his room between the last week in January and the first few days of February, 1926; that, at his first meeting with Daley, Daley had an operating receiver and circuit diagrams of the same with values given; that he explained his concept of nonregeneration and constant maximum energy transfer; that he demonstrated his concept by comparison with other receivers, and in showing the nonregenerative feature he interchanged tubes of widely varying interelectrode capacities without affecting the system; that Cusick did operate the set and trace the circuit thereof and at that time or within a few days thereafter made copies of the circuit diagrams shown him by Daley (Exhibit 7); that at either the first or second meeting he made arrangements with Daley to jointly build another receiver (Exhibit 4); and that Daley supplied him with data and some materials for building the receiver.

Casey testified that he introduced Cusick to Daley and that he was present when Daley showed Cusick the operating receiver and some drawings.

Daley, Cusick, and Graham testified that Exhibit 4 was constructed in the latter part of March and completed in the first week of April, 1926; that it was tested aurally and comparatively by Daley and Cusick.

Trube contests strenuously this date of construction of Exhibit 4. Testimony was brought in from two prior interferences, Nos. 56,064 and 56,065, to the effect that in those interferences Cusick testified that he completed the first set embodying the Daley circuit about the middle of 1926 and that he perhaps did not arrive at its ulti-

mate stage until the fall of 1926. When confronted with this evidence, Cusick stated that at the time he gave that evidence he had not sufficiently refreshed his recollection as to when he actually built the first Daley set, but that the testimony "as I gave it yesterday is my best present memory of when these sets were constructed." This testimony was given in March, 1933.

The Board of Appeals concluded that: "The general uncertainties of the various witnesses who were concerned in this construction and the lack of records to check the dates suggested by them, together with the conflicting testimony of these witnesses in other interferences, do not in our judgment constitute such a record as would warrant us in finding that the party Daley has established definitely the construction and completion of Exhibit 4 on any date before the filing date of the Trube application, July 2, 1926."

The witnesses Daley, Wessling, Cusick, and Tivnan testified that during the period just prior to Trube's filing date of July 2, 1926, and until October 24, 1927, the date of filing of Daley's parent application, Daley and Cusick were engaged in further experimentation with and construction of a number of sets embodying Daley's amplifier for the purpose of improving the sensitivity and selectivity of those sets; that during that time efforts were made and conferences held for the purpose of filing an application for a patent; and that the experimentation during this period was directed to improving sets in matters collateral to the invention in issue.

The Board of Appeals stated that: "* * * it does not appear that Daley was definitely engaged in reducing to practice any particular conception at the time Trube entered the field. * * *"

We take this to mean that the Board held that Daley was not diligent during the critical period.

We have carefully considered the evidence with reference to the proof as to Exhibit 4. It seems to be conceded that this receiver meets the requirements of the counts. We are in agreement, however, with the conclusion reached by the Board that Daley has failed to establish that this exhibit, or any other receiver embodying the structure of the counts, was completed on any date before Trube's filing date. There is a singular lack of any documentary exhibits which would ordinarily be made concerning dates and other relevant subject matter. Ordinarily, under such circumstances, there would be some record or recorded circumstances that would tend to establish a given date or be corroborative of oral testimony concerning such date. It seems to require no further expression by us as to the unsatisfactory character of Daley's proof as to Exhibit 4.

Daley, having conceived the invention before Trube's filing date, would be entitled to priority as far as the issues here are concerned, even though he was last to reduce to practice if he were diligently engaged in reducing the invention to practice at a time just prior to Trube's entering the field, July 2, 1926. It was the view of the Examiner of Interferences, expressed in interference "B," that the testimony of Daley's witnesses relating to diligence towards reduction to practice shows that they were engaged in improving sets collateral to the invention at issue. The Board, in interference "A," adopted this view. These concurring views of the two tribunals below on the subject of diligence are amply supported by the record, the substance of which we have stated hereinbefore. That the appellant Daley did reduce to practice before his filing date is not questioned, but the record fails to show diligence at the critical period.

It follows in view of the above considerations that the Board properly awarded priority of the invention in the counts in interference "A" (Patent Appeal No. 3713) to the party Trube, and its decision is affirmed.

Appeal No. 3713 affirmed.

Appeal No. 3714 affirmed.